Okay, our first case this morning is number 24-1470, Harris-Campbell v. Treasury, Mrs. Blanchard. Good morning, Your Honors. Yeah, go ahead. Approach the podium. Should I start?   May it please the Court, Terry Blanchard for Petitioner Denise Lovett Harris-Campbell. I would like to reserve two minutes for rebuttal. This case turns on harmful evidentiary error and substantial evidence. The Board did not merely mention the tax court documents as background. It used settlement-derived tax court materials as substantive proof of the disputed tax liability specifications. And this is harmful, and it's not harmless error, because those documents supplied apparent judicial confirmation, the alleged deficiency amounts, and the seriousness supporting the removal of a long-time employee. So without those disputed settlement documents from the tax court, the only remaining evidence is the audit assertions, ambiguous investigative notes, incomplete documentary evidence, and contested inferences. The administrative judge originally reversed the agency's removal decision, and the Board reached that opposite result only after relying on the tax court documents. Now, we understand that the administrative judge's decision is not controlling, but it does show that outcome was not inevitable and that the error was outcome-relevant. And what's important, Your Honors, is that the administrative judge relied on the Supreme Court case in International Building. And in that case... If I remember right, the Board itself agreed with the AJ that, under International Building, there could not be collateral estoppel or issue preclusion or what have you, but then said, we agree with that, we don't think the tax court judgment order was controlling. Nevertheless, it was relevant and material and, for various reasons, reliable and consistent with and supporting other evidence. What's wrong with that analysis? The Board relied on the court in Tawadros versus... That's not our decision. What is the error? The error is relying on the tax court documents to prove a disputed fact. And because of 408. Because of 408. And we understand that the Board is not bound specifically by the rules of evidence, but the Board is bound by substantial evidence and reasonableness. And the question is, was it reasonable for the Board to rely on settlement-driven documents to supply the missing information? So what were the specific documents and which ones of them fit into the specific 408A 1 and 2 categories? They're really at least focused on discussions leading up to a settlement, not the resulting settlement. Well, there was a stipulation that was unsigned, and the Board noted that it was unsigned. And why was the Board not reasonable in attributing pretty little, if any, significance to the fact that it was unsigned? Your client actually relied on it by submitting it to the bankruptcy court. That's true. I didn't take it that there was a dispute, that the parties agreed to that stipulation. It just happens not to have a signature to it. Well, the administrative judge found it significant that it wasn't signed, and the Board points out and acknowledges that the settlement stipulation was not signed. Let's assume that we conclude that it was nonetheless agreed to, that it was an agreed settlement, and that part of the settlement was the stipulated facts. Is there anything wrong under 408 for using the results of the settlement in connection with the MSBB proceeding? Well, yes, because without that stipulation, which doesn't go to prove the disputed facts regarding the specifications that the Board relied on, there is no substantial evidence of what happened. So from that tax stipulation— Okay, but what I'm trying to get at, and I think it's the same thing that Judge Toronto is asking about, is what's wrong under Rule 408 with using the product of the settlement? Let's assume that the stipulation was the product of the settlement in the MSBB proceeding as evidence of the facts. Because it's relying on an adjudication of the merits, and that is exactly what the Supreme Court addressed in the international paper case. So what the Board did is it relied on the tax court documents as an adjudication on the merits, and it used that information to supply the numbers regarding the tax deficiencies and the relationship between her and her household members. So I would argue that under 408, and why there is error, is because the Board used the tax court documents as an adjudication on the merits in the employment case. When those issues weren't adjudicated, and that is what 408 is trying to prevent. It's not an adjudicated issue, and it is a settlement, but it's a settlement used against her. So I had started talking about the Tawadris case. I believe the Tawadris case is an opposite to the facts of this case. In that case, as you know, the employer had given the tax court settlement documents to lessen the penalty, showing that it was a lesser amount at issue. I would say that that is akin to somebody waiving their right, like waiving your right to a speedy trial. You can do that, but the law doesn't impose that upon you. And so in this case, because the Board relied so heavily on the settlement-driven tax court documents that is being used against her, that is what 408 prohibits. And that's why there is error and reversible error in the Board relying so heavily on the tax court documents that were driven by settlement negotiations. The issue is not whether the Board can never or ever consider tax court documents. The issue is, in this case, how the Board used these documents. The Board used these documents to prove validity and the amount of money  of the disputed tax liability allegations. So without the tax court documents, there's no basis for that. The documents converted a compromise resolved tax matter into an apparent adjudicated proof of removable conduct. And that was prejudicial because the documents went to the heart of the tax liability specifications, the dependency treatment issue, the seriousness of the alleged misconduct, and the penalty. So in this case, the Board used the tax court documents to do what the remaining record could not independently do, and that is make disputed liability appear conclusively established. And... Which documents that were in evidence and relied on were outside the group of what you call tax court documents? There was other evidence. There was the investigation notes. And that's basically it. So there was just the investigation, and the investigation notes are just assertions. So the tax court documents supplied the specific dollar amounts, the apparent judicial confirmation, the seriousness for removal, but more importantly, it provided a bridge from the audit dispute, which was just a dispute, to sustained misconduct. The remaining evidence was not substantial evidence. So the agency had to prove that the charge specifications were not merely, and not merely just show an audit, an investigation, and concern about judgment. Regarding the tax liability specifications, the audit materials are not self-proving misconduct. An audit position is just the agency's assertion. It's not an adjudication. A later adjustment or compromise or settlement is not proof of the charge specifications. I thought that the investigation notes and whatnot reported a number of statements, both by your client, maybe by the goddaughter and others, which in the absence of some admissibility concern would be evidence, and then the board could inquire, what is the contrary evidence that you all have submitted, and conclude even on that alone, we make the inference that this wrong was committed. The investigation notes were contradicted by other evidence that was more formally presented by TGNA. So we would say that the investigative notes do not constitute substantial evidence because they were contradictory, and that is another issue that the administrative judge pointed out, the contradictions between the notes and the more formal documents that were submitted by the agency. So they're not substantive evidence. Regarding the dependency issue, dependency is fact-specific. It turns on residence, support, income, household status, and related requirements. The agency's proof on support and income was incomplete and contested. The investigative notes were ambiguous and did not supply the necessary monthly payment details required to sustain the specifications in this case. Regarding the health benefit allegations, the agency had to prove ineligibility and a basis for discipline. So absence of blood relationship alone is not enough. The record included household and family support circumstances, and Ms. Harris-Campbell disputed key aspects of the agency's theory. Regarding the penalty issue, your honors, even if some lesser misconduct was proven, the penalty analysis was distorted by reliance on the tax court documents. Removal is the most severe civil service penalty, and the board had to consider the seriousness, the amount, the nexus, and the mitigation. Ms. Harris-Campbell had 30 years of service, was near retirement. Now, the facts don't excuse proven misconduct, but they do matter to the penalty. And here, the board could not fairly weigh mitigation while treating the disputed tax allegations as effectively confirmed by the tax documents. If the seriousness finding was inflated by the improper evidence of the tax court documents, the penalty analysis must be redone. Okay, I think we're out of time. We'll give you two minutes. Okay, thank you. Your honors, may it please the court, I can tell by your questions that you are familiar with the facts in the law in this case, so I will be brief. The court should affirm the decision below because the board's evidentiary rulings fell within its sound discretion, and the MSPB's final decision sustaining Ms. Harris-Campbell's removal was supported by substantial evidence. I know the tax court rule isn't raised on appeal, but it's sort of puzzling. What do you make of it? Literally, it would seem to preclude using these stipulations in any other proceeding. What's the interpretation of that rule? I know there's not a lot of case law on it, but do you see the tax court rule as addressed to only other tax court proceedings as opposed to proceedings generally, or how does that rule get interpreted? Well, yes, your honor, it's a good question. There's not a lot on that. I mean, we would argue that in a situation like this with the MSPB, where there's broad discretion sort of for the administrative law judge and the board to take into that evidence, we would argue that it would be admissible and usable in those cases. But I agree with your honor that the way the broadness with which that rule is written does suggest that there could be an alternative possibility. But I'm not sure the tax court would have authority to tell MSPB that it can't rely on documents from the tax court. It's not briefed. Yes, not briefed, your honor. But as your honors have spoken about previously, the board's evidentiary rulings did fall within its sound discretion. The federal rules of evidence did not apply to the MSPB. They did not apply to the administrative law judge. Can I ask, do I remember right that the board's opinion itself does not refer to Rule 408? That's correct, your honor. Was the argument, was a 408 specific argument presented to the board? I don't recall whether a 408 argument was presented to the board. I think in reading between the lines of the board's decision, your honor, I think the reason they did not bring up the federal rules of evidence is because they're not applicable. So I know it was raised in Ms. Harris-Campbell's briefing that, you know, they did not. And your red brief doesn't say that this argument is forfeited. What's that? Your red brief here does not say that this was forfeited. That's correct, your honor. That's correct. The 408 argument. What's that? The 408 argument. Yes. We did not say that the argument was forfeited as a result of the MSPB. We basically took the argument at face value, your honor. And which documents, you make a couple of arguments about why you think 408, even if it was applicable, wouldn't be violated. One of those I'm actually not that interested in, which is that the claim is different. So put that aside. But your first argument, the one that appears, I think, in a paragraph on page 14 of your red brief, says at least the ultimate stipulation embodied in the tax court order is not barred by 408A, either Paragraph 1 or Paragraph 2. And I think I understand that argument. Are there other so-called tax court documents at issue that might come within 401, 408A1 or 2? If I understand your honor's question, you're saying that you think or the- You say on page 14 reasonably, I think, that at least for one of the documents, we're talking about the result of the settlement, not conversations leading to it and so on. Are there other- there's this group of documents that I think are referred to here as the tax court documents. And it's not- I'm trying to understand what those documents are. There's the actual- yeah, what are- Okay, yes, your honor, I see what you're talking about here. Rather, Ms. Harris-Campbell and the MSPB agree the tax documents are the product of a settlement between the IRS and the appellant. I think what we're referring to there, your honor, is sort of, you know, the other documents that sort of went into determining the settlement. So I think that perhaps, you know, the discussion- any documents related to the discussions between the tax counsel that was handling that for the IRS and things like that, or, you know, that might be settlement documents. But I'm actually not unsure, your honor, if those are part of the record. Say that again. Were those part of the record? I was just saying, your honor, I'm not- I don't believe any of that was part of the record. I believe it was just the settlement. To your honor's point, though, the things that were part of the record were sort of the basis of the tax case, which were, you know, the audit records. They were the product of the settlement. I'm sorry, say that again. They were the product of the settlement, the result of the settlement. Well, the only- if I understand your honor's question, the settlement that was- the unsigned settlement document that was part of the MSPB record, that's the product of the settlement. Right. Right. Then there are the documents that sort of were before- not before, as in in front of, but before the tax settlement as, like, the IRS audit records, the inspector general's notes, and things like that, those sort of predate that. I think- Yeah, but the fact that those happen to be involved in the settlement negotiations doesn't make them law. Yes, your honor. It wouldn't exclude them by virtue of them sort of transiting that process. No, your honor. No. And, yes, which brings me to my sort of point. Ms. Harris-Campbell has suggested that there really wasn't evident- much evidence except the inspector's notes besides the- or, sorry, the settlement record and then the- or the settlement agreement, the unsigned settlement agreement, and then the inspector's notes. But there were things, your honor. It was the audit, the audit records, the inspector general's interviews notes, and then obviously what Judge Tarantino-Taranto suggested was the discussions and the interviews, the examination changes reports, and then also, your honor, I mean, there was substantial testimony at the hearing, right, and all of that would be evident. So- We don't have a question here, I think this is right, about any reliance by the AJ on demeanor in such a way that the board's self-adopted rule to defer to demeanor assessments of the AJ is somewhat difficult. Correct, your honor. That wasn't raised. I mean, I think if you look at the MSPB board's decision, it falls well within, you know, if you are going to base a ruling and sort of override the administrative law judge's discussion, you know, of demeanor and things like that, you have to basically have- you basically have to, like, walk through it and describe it thoroughly. And I think the board here, although that issue wasn't raised, I think the board here did that substantially and took care of that. I think your friend on the other side argued that the board over-relied or over-read Tawadros, is that the name of it, the board decision? Yes, your honor. Can you explain that? I mean, we just disagree, your honor. I think if I heard her correctly, I believe the distinction they were trying to make was that he was using it affirmatively and it was in a different context. I mean, our opinion on Tawadros is that it shows that, you know, these documents, these settlement documents can be used in these MSPB matters, and it provides support for that. But I think the stronger support, your honor, is the 408 idea that these are not- back to basic 408 premises, right? These are not the negotiations. The agreement is not the negotiations and things like that. So we would rely more heavily on that than the Tawadros case. Okay. Yes, sorry, your honor. I was just reviewing my notes to make sure of the last point here. The other thing is, in the final part of her argument, Ms. Harris-Campbell, it seemed like she was asking your honors to sort of re-weigh the evidence that the MSPB considered, and obviously that's beyond what can be done here, your honor. We would ask that the court affirm the MSPB's decision. Thank you for your time. Thank you, Mr. Franklin. Ms. Blanchard, you have two minutes. Your honor, in response to my colleague's question about are we asking you to re-weigh the evidence, no, we're not asking you to re-weigh the evidence. What we're asking you to do is to enforce the evidence of substantial evidence review and evidentiary discretion. The decision was not supported by substantial evidence because it rests on illegally improper evidence when the remaining record does not independently support the agency's charges. Without those settlement-derived tax court documents, there is no substantial evidence, and it was not reasonable for the agency to rely on those documents. Respondent treats the tax court documents as just one more piece of evidence, but they were not. These tax court documents supplied the judicial confirmation of the disputed tax liability allegations. Respondent's other evidence shows an investigation, an audit dispute, and contested family support issues, but it does not independently prove the charged misconduct or the removal penalty. The administrative judge originally reversed the removal, and this shows that this outcome was not inevitable, and the only difference is the consideration of the tax court documents. Ms. Harris Campbell was a longtime IRS employee. She had served nearly 30 years, and she was near retirement. That matters to the penalty. At minimum, we're asking you to vacate and remand. Okay. Thank you. Thank both counsel. The case is submitted. Thank you.